UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MICHAEL S. SHIPWASH,               )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        No.: 3:13-CV-564-TAV-HBG
                                   )
UNITED AIRLINES, INC.,             )
                                   )
            Defendant.             )

**MEMORANDUM OPINION**

This civil action is before the Court on the Motion to Dismiss by Defendant, United Airlines, Inc. [Doc. 6].  Defendant moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.  Plaintiff has responded to defendant's motion [Doc. 9], and defendant has replied [Doc. 10].  For the reasons set forth below, and after considering the relevant law, the Court will **GRANT** defendant's motion to dismiss plaintiff's complaint.

**I.    Background[1]**

Plaintiff booked and paid for his first trip to Hawaii with defendant on May 7, 2013 [Doc. 1 ¶ 5].  The trip was scheduled for July 19, 2013, to July 27, 2013 [*Id.* ¶ 6].  Plaintiff alleges that defendant informed the passengers that they would be able to watch

_____

[1] For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint." (citations omitted)).

Direct TV during the flight from Los Angeles to Hawaii if they paid a fee of $7.99 [*Id.*]. Plaintiff asserts that he paid for Direct TV but learned that the television could no longer be watched after approximately twenty minutes into the flight, except for about five movies that were shown [*Id.*]. According to plaintiff, when he brought this to the attention of a flight attendant, she informed him that he would be refunded [*Id.*].

Plaintiff states that he arrived at the airport in Hawaii for his return flight on July 27, 2013, about two hours before the flight was scheduled to depart at 9:04 p.m. [*Id.* ¶ 7]. According to plaintiff, at approximately 8:00 p.m., a gate attendant announced that "the plane [was] having a problem with it's [sic] communications but that problem [was] being worked on and [they would] be boarding shortly" [*Id.*]. Plaintiff asserts that this statement was false [*Id.*]. Plaintiff alleges that "[i]nstead of 'boarding shortly,' the gate attendant continued to give the same 'speech' every hour or so, for the next 6 hours" [*Id.* ¶ 8]. Plaintiff states that it was not until about 2:00 a.m., after he and several other passengers had repeatedly asked for information, that they were informed that the flight was canceled [*Id.*].

Plaintiff further states that he was not allowed to leave the airport and return during the seven hours that his flight was delayed, before being canceled [*Id.* ¶ 9]. Rather, he was confined to waiting in an area without air-conditioning or a bathroom [*Id.*]. Plaintiff also states that he was forced to travel back and forth from the waiting room to the bathroom on the first floor, which was difficult for him as a disabled veteran, and he also risked the chance of missing his flight if it was called while he was gone [*Id.*].

2

Plaintiff further claims that defendant's employees eventually offered the passengers water, but only initially gave the water to women and children, and the water was given in "very tiny" cups [*Id.*].

Even further, plaintiff alleges that after his flight was canceled, he was "kicked out" of the airport, along with other passengers, and told that this was because the TSA employees had left to go home [*Id.* ¶ 11]. Plaintiff alleges that he waited outside in the rain for approximately forty-five minutes before the gate attendants let some people back into the airport [*Id.*]. Plaintiff also claims that defendant's first class passengers were treated differently than the coach passengers and were given information about the flight, accommodations, and offered transportation that was not made available to coach passengers [*Id.*].

Plaintiff states that when he was back inside the airport, he contacted United Airlines to book another flight as he was instructed to do [*Id.* ¶ 12]. According to plaintiff, defendant's representatives were "very rude and condescending" [*Id.*]. Plaintiff states that the next day, he spoke with another of defendant's representatives and was able to re-book his flight; however, the economy plus seat that he originally paid for was not available [*Id.* ¶ 13]. Plaintiff claims that this was particularly problematic for him because "he is very claustrophobic" [*Id.*].

Plaintiff states that after he returned from his trip, he wrote a letter to defendant detailing his encounter with defendant and requesting a reasonable resolution for his claims [*Id.* ¶ 14]. According to plaintiff, defendant did not respond to this letter [*Id.*].

3

Following his initial letter, plaintiff states that he tried to contact defendant several times and in addition to being put on hold for long periods of time, he was given information that he claims was false [*Id.* ¶ 15]. Plaintiff claims that after further attempts to contact defendant, he was eventually contacted by defendant's Customer Care Manager [*Id.* 16–17]. Plaintiff states that he was informed by defendant that they were unable to honor his refund because the ticket was actually used; instead, defendant offered him a $500 voucher off his next travel and a check for $25 as a refund for his Direct TV purchase [*Id.* ¶ 18–19; Doc. 1-2]. Plaintiff also states that he considers the check "a slap in the face," and has refused to cash it [*Id.* ¶ 20].

Plaintiff commenced this action on September 20, 2013, asserting the following: negligence; negligence per se; negligence and fraudulent misrepresentation; failure to disclose material facts and fraudulent concealment; fraud and promissory fraud; a violation of the Tennessee Consumer Protection Act (the "TCPA"); unfair and deceptive acts or practices; gross negligence; strict liability; civil conspiracy; injunctive relief;[2] breach of contract; conversion; quantum meruit/unjust enrichment; and negligent hiring, training, supervision, and retention [Doc. 1].

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain

---

[2] Defendant has argued that plaintiff's claim for injunctive relief is not a cause of action, but rather, an equitable remedy potentially available upon proof of an underlying claim [Doc. 10]. The Court is persuaded by this argument and, therefore, does not analyze plaintiff's request for injunctive relief for purposes of defendant's motion to dismiss.

4

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id*. at 679.

## III. Analysis

### A. TCPA and Unfair and Deceptive Acts or Practices in Violation of Tenn. Code Ann. § 47-18-104[3]

Plaintiff claims that defendant violated the TCPA by engaging in unfair and deceptive conduct in dealing with him because defendant intentionally misled him "with regard to the flight and actions subsequent thereto (e.g. accommodations after being kicked out of the airport), and these misrepresentations were both deceptive and unfair" [Doc. 1 ¶ 47]. In the alternative, plaintiff claims that defendant's actions constituted unfair and deceptive acts or practices in the course of providing goods and services to a consumer in violation of the TCPA [*Id.*]. Plaintiff also argues a separate cause of action for unfair and deceptive acts or practices under Tenn. Code Ann. § 47-18-104 [*Id.* ¶ 49]. Plaintiff claims that defendant engaged in unfair and deceptive acts or practices affecting the conduct of any trade or commerce by "representing that goods or services are of a particular standard, quality or grade [when] they are of another," and by engaging in acts or practices which are deceptive to the consumer or any other person [*Id.* ¶ 51–52 (citing Tenn. Code. Ann. §§ 47-18-104(b)(7) & (27))].

In its motion to dismiss, defendant argues that plaintiff's claims under the TCPA fail as a matter of law because they are preempted by the Airline Deregulation Act (the "ADA") [Doc. 6]. In response, plaintiff argues that the TCPA is not preempted by the ADA because defendant's actions "which defrauded [plaintiff] falls within the category

---

[3] In its motion to dismiss, defendant argues that both claims fall under the TCPA and should not have been asserted separately [Doc. 6]. Because the Court agrees with this determination, the Court will treat both claims as arising under the TCPA.

of claims that are 'too tenuous, remote, or peripheral' to aviation regulation to be preempted by the ADA" [Doc. 9-2 (citations omitted)].  In the alternative, plaintiff argues that public policy supports allowance of his claims because "the public has a distinct interest in the assurance that airlines fairly and accurately depict their offerings and provide for the safety and well-being of consumers" [*Id.*].

The ADA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b)(1).  The Supreme Court has found the preemptive reach of this language to be broad and has construed the phrase "relating to" to mean that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).  In *Morales*, the Supreme Court discounted the argument that the ADA does not pre-empt the enforcement of general laws not directed at airlines specifically; rather, the Supreme Court found that a state law may "relate to" the price, route, or service of an air carrier and, thereby, be pre-empted, even if the law is not specifically designed to affect such price, route, or service, or the effect is only indirect. *Id.* at 386.  Similarly, in *American Airlines, Inc. v. Wolens*, the Supreme Court addressed the issue of whether the Illinois Consumer Fraud and Deceptive Business Practices Act was pre-empted by the ADA.  513 U.S. 29 (1995).  In making its decision, the Supreme Court first defined the term "enact or enforce any law" as used in the ADA, and found

7

that the Illinois Consumer Fraud Act was pre-empted by the ADA because it had "the potential for intrusive regulation of airline business practices . . . ." *Id*. at 227–28.

The TCPA provides that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices . . . ." Tenn. Code Ann. § 47-18-104(a). Here, as in the Act at issue in *Wolens*, the TCPA is prescriptive in that "it controls the primary conduct of those falling within its governance." *Wolens*, 513 U.S. at 227; *see, e.g.*, *Copeland v. Nw. Airlines Corp.*, No. 04-2156, 2005 WL 2365255, *3 (W.D. Tenn. Feb. 28, 2005) (finding that the TCPA constitutes state-imposed regulation under the ADA). Additionally, there is little question that plaintiff's complaint states claims that relate to the defendant's services as an air carrier. Plaintiff claims that defendant intentionally misled him with regard to the flight and its actions afterward—for example, promising accommodation and transportation after cancelling his flight, and that these actions were unfair and deceptive acts or practices in the course of providing goods and services to a consumer [Doc. 1 ¶ 48]. Accordingly, the Court finds that plaintiff's TCPA claims are pre-empted by the ADA and is unpersuaded by plaintiff's alternative public policy argument in light of its finding that these claims are expressly pre-empted by the ADA.

## B. **Strict Liability**

Plaintiff next alleges that defendant has engaged in "an ultra-hazardous and abnormally dangerous activity by flying an aircraft with passengers on it" and is, therefore, strictly liable for all damages resulting from this act [Doc. 1 ¶¶ 61–62]. In its

motion to dismiss, defendant argues that plaintiff has failed to state a claim for strict liability because flying an aircraft is not considered an ultra-hazardous and abnormally dangerous activity. Defendant also argues that regardless, plaintiff's allegations did not occur on defendant's aircraft or while defendant was operating its aircraft but rather, at the Hilo International Airport [Doc. 6]. Plaintiff's response argues that defendant's motion makes "self serving, conclusory and unsupported statements" by claiming that operating an aircraft is not considered an ultra-hazardous or abnormally dangerous activity [Doc. 7].

The general principle for the application of strict liability is that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519(a). "This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." § 519(b). *See also Leatherwood v. Wadley*, 121 S.W.3d 682, 699 (Tenn. Ct. App. 2003) (citations omitted) ("In Tennessee, defendants engaged in ultrahazardous activities are held strictly liable for injuries caused to the person or property of another by defendant's participation in the activity."). "The application of strict liability for ultrahazardous activities appears to be rather limited in Tennessee, as it is in other jurisdictions." *Isabel v. Velsicol Chem. Co.*, 327 F. Supp. 2d 915, 919 (W.D. Tenn. 2004).

Here, plaintiff argues that defendant was engaged in an ultra-hazardous and abnormally dangerous activity—that is, flying an aircraft, and his damages are as a result of defendant engaging in this activity [Doc. 1 ¶¶ 61–62]. The Court, however, need not reach the decision of whether flying an aircraft is considered an abnormally dangerous activity. To recover under the theory of strict liability, plaintiff has to show that the harm he suffered is of the kind that makes the activity abnormally dangerous. *See, e.g.*, Restatement (Second) of Torts § 519 cmt. e ("The rule of strict liability . . . applies only to harm that is within the scope of the abnormal risk that is the basis of the liability. One who carries on an abnormally dangerous activity is not under strict liability for every possible harm that may result from carrying it on."). The Court finds that plaintiff has not alleged any facts to show that the injuries he claims are of a kind that would make flying an aircraft an abnormally dangerous activity.[4] Accordingly, plaintiff's claim for strict liability will be dismissed for failure to state a claim for which relief can be granted.

## C.   Civil Conspiracy

Plaintiff further alleges that defendant entered into a civil conspiracy to commit wrongful acts, including lack of security at the Hilo airport, kicking him out of the airport because security had left for the day, negligence, negligence per se, and gross negligence among others [Doc. 1 ¶ 65]. Plaintiff claims that this civil conspiracy was the proximate cause of his damages [*Id.* ¶ 68]. Defendant has moved to dismiss this claim on the

---

[4] The Court does not hold that flying an aircraft is an ultra-hazardous and abnormally dangerous activity. Rather, the court does not reach this question in making its determination and rests solely on the type of harm that plaintiff has alleged.

ground that it did not commit any unlawful act by there being no security at the airport because that was out of defendant's control, and that plaintiff has not shown that there was any misrepresentation by its employees with regard to why plaintiff was asked to leave the airport [Doc. 10].  Before reaching the issue of whether defendant's acts were unlawful, however, the Court must address the threshold issue of whether plaintiff has satisfied the plurality requirement to establish an actionable conspiracy. The Court finds that plaintiff has not.

Under Tennessee law, "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002) (citing *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001)).  "Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme." *Id*.  Tennessee recognizes that a corporation can be capable of extra-corporate conspiracy where "a corporation becomes vicariously liable for the conduct of its agents who conspire with other corporations or with outside third persons." *Id*. Where the alleged co-conspirator is an agent or employee of the same corporate entity, however, Tennessee recognizes the "intracorporate conspiracy immunity doctrine." *Id*. Under this doctrine, "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting

11

through its officers, directors, employees, and other agents, *each acting within the scope of their employment*." *Id*. at 703–04.

Because of this intracorporate conspiracy immunity doctrine, proof of the existence of a conspiracy must be found, if at all, in conduct between defendant and some outside third party. Here, plaintiff has not alleged sufficient facts to show that defendant was working in concert with any outside third person to commit the acts that plaintiff alleges are unlawful—to wit, the lack of security at Hilo airport, and kicking plaintiff out [Doc. 1 ¶¶ 65–66]. Rather, plaintiff's complaint alleges that defendant conspired with its employees who "lied, misrepresented and ordered everyone (including the Plaintiff) out of the airport[,] and allowed TSA security to leave for the day before the Hilo airport was secured" [Doc. 1 ¶ 67]. Additionally, plaintiff does not expressly allege or even imply that the employees involved in the alleged conspiracy were acting outside the scope of their employment.

It is well settled that "[a]s long as the agent is acting within the scope of his or her authority, the agent and the corporation are not separate entities and cannot be the sole parties to a conspiracy." *Trau-Med*, 71 S.W.3d at 704. It is also settled that "there is no duty on the part of the court to create a claim that the pleader does not spell out in its complaint." *Moses v. Dirghangi*, No. W2011-02403, 2013 WL 5519506, at *3 (Tenn. Ct. App. Oct. 3, 2013) (citing *Utter v. Sherrod*, 132 S.W.3d 344 (Tenn. Ct. App. 2003)). Accordingly, the Court finds that plaintiff's claim for civil conspiracy will be dismissed

12

because plaintiff has failed to allege the requisite plurality of legal actors necessary for the finding of a conspiracy.

### D. **Negligent & Fraudulent Misrepresentation, Failure to Disclose Material Facts & Fraudulent Concealment, and Fraud & Promissory Fraud**

Plaintiff also asserts claims for negligent & fraudulent misrepresentation, failure to disclose material facts & fraudulent concealment, and fraud & promissory fraud against defendant. In support of these claims, plaintiff argues that information supplied by defendant was false when made and was in regard to material facts, and also that defendant failed to disclose facts to plaintiff that it knew may justifiably induce plaintiff to refrain from acting in a business transaction [Doc. 1 ¶¶ 34–46]. Defendant moved to dismiss this claim, arguing that plaintiff has failed to demonstrate that the alleged statements made by defendant's employees were a misrepresentation, and that plaintiff has not set forth enough facts to meet the requirements for pleading fraud [Docs. 6, 10].

Under Rule 9(b) of the Federal Rules of Civil Procedure "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). ("'[A]llegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made.'" (quoting *Coffy v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)).

> [A] complaint is sufficient under Rule 9(b) if it alleges the
> time, place, and content of the alleged misrepresentation on

> which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud, and enables defendants to prepare an informed pleading responsive to the specific allegations of fraud.

*United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 518 (6th Cir. 2009) (internal quotations omitted). "A court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Allegations of reliance must also be pled with particularity. *Evans v. Pearson Enters.*, 434 F.3d 839, 852–53 (6th Cir. 2006).

In order to state a claim for fraud under Tennessee law, a plaintiff must plead the following elements: (1) a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made knowingly, without belief in its truth, or recklessly; (5) the plaintiff reasonably relied on the misrepresentation; and (6) the plaintiff suffered damages as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008); *see also Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (grouping the requirements into four elements).

Here, after reviewing the allegations set forth in plaintiff's complaint, the Court concludes that plaintiff has not shown that the alleged representations, if false when made, were made knowingly, without belief in their truth, or recklessly. In addition, the Court finds that plaintiff's allegations do not meet the heightened requirements of Rule 9.

14

While plaintiff alleges generally that defendant's employees supplied information that was false and on which he relied, plaintiff does not provide specific allegations as to the "fraudulent scheme" involving the cancellation of plaintiff's flight and the availability of accommodations, or to defendant's "fraudulent intent." Rather, plaintiff's complaint merely contains unsupported assertions and conclusions that the Court finds are insufficient to state a claim for relief. Accordingly, all of plaintiff's claims alleging fraud will be dismissed.

### E.    <u>Negligence Per Se</u>

Plaintiff next alleges that defendant was negligent per se because the lack of security at the Hilo airport and defendant's subsequent act of kicking him out of the airport violated 49 C.F.R. § 1542.107 [Doc. 1 ¶¶ 30–31]. In its motion to dismiss, defendant argues that the regulation cited by plaintiff does not apply to defendant and, therefore, does not impose a duty on it because it is not an "airport operator" as used in the regulation [Doc. 6]. In response, plaintiff asserts that defendant makes a self-serving, conclusory, and unsupported statement by claiming that it is not an airport operator under the regulation [Doc. 9-2].

The regulation that forms the basis of plaintiff's negligence per se claim provides, in pertinent part, that "[a]fter approval of the security program, each airport operator must notify TSA when changes have occurred to the . . . [o]perations of an aircraft operator or foreign air carrier that would require modifications to the security program as required under § 1542.103." 49 C.F.R. §1542.107(a)(2). The chapter defines an airport operator

15

as "a person that operates an airport serving a aircraft operator or a foreign carrier required to have a security program . . . ." 49 C.F.R. § 1540.5.

The doctrine of negligence per se is firmly established in Tennessee law. "The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se." *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) (citing *McIntyre v. Balentine*, 833 S.W.2d 52, 59 (Tenn. 1992)). A plaintiff bringing a negligence per se claim must show "that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public." *Id.* (citations omitted). "It must also be established that the injured party was within the class of persons that the statute was meant to protect." *Id.* (citations omitted); *see also Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992) (grouping the elements required for a negligence per se claim into three). "In discussing the doctrine of negligence per se, [Tennessee Courts have] noted that the doctrine is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute." *Whaley v. Perkins*, 197 S.W.3d 665, 673 (Tenn. 2006) (internal citations and quotation marks omitted). Therefore, as a threshold matter, the Court must determine whether the regulation at issue imposed a duty on defendant. *See Smith*, 841 S.W.2d at 831 ("First, it must be shown that the defendant violated a statute or ordinance which 'imposes a duty or prohibits an act for the benefit of a person or the public.'") (quoting *Nevill v. City of Tullahoma*, 756 S.W2d 226, 232–33 (Tenn. 1988)).

16

Here, plaintiff has not alleged in his complaint that defendant is an airport operator. Rather, plaintiff describes defendant as a corporation "with it's [sic] primary purpose of operating airlines engaged in the business of transporting passengers to and from locations" [Doc. 1 ¶ 4]. The Court finds that this does not comport with the definition of an "airline operator" under 49 C.F.R. § 1540.5. Additionally, the Court is persuaded by defendant's argument that the Hilo airport is owned and operated by the state of Hawaii. *Cf. Weir v. Jolly*, No. 3:10-CV-898, 2011 WL 6778764, at *3 (D. Or. Dec. 23, 2011) (finding that the Port of Portland is the airport operator of the Portland International Airport under 49 C.F.R. § 1540.5). For this reason, the Court finds that the regulation in question does not impose a duty on defendant because defendant is not an airport operator. Therefore, plaintiff has failed to state a claim against defendant for negligence per se.

### F. Negligence, Gross Negligence, and Negligent Hiring, Training, Supervision & Retention

In his complaint, plaintiff also asserts claims for negligence, gross negligence, and negligent hiring, training, supervision, and retention [Doc. 1]. In support of his negligence claim, plaintiff alleges that defendant had a duty "to provide honest, reliable and safe transportation from Hawaii to the Continental United States" [*Id*. ¶ 22]. Plaintiff claims that defendant breached this duty by "lying, misrepresenting and 'conning' [plaintiff] as to the flight and then kicking [plaintiff] out of a strange airport to fend for himself" [*Id*. ¶ 23]. Plaintiff claims that defendant also breached its duty of care "by failing to take timely, adequate, reasonable and sufficient measures to prevent what

17

occurred to [plaintiff] from occurring" [*Id.* ¶ 24]. In its motion to dismiss, defendant argues that plaintiff has failed to demonstrate that the statements made by defendant were a misrepresentation, or that defendant had any control over plaintiff being asked to leave the airport [Doc. 6].

In order to succeed on a claim of negligence under Tennessee law, a plaintiff must establish "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Leatherwood v. Wadley*, 121 S.W.3d 682, 693–94 (Tenn. 2003) (quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)).

It is well settled that a plaintiff is not required to provide detailed factual allegation in a complaint; however, the Court is not required to accept mere labels and conclusions. *See Twombly*, 550 U.S. at 555. Here, even construing the complaint in the light most favorable to plaintiff, as the Court is required to do on a motion to dismiss, plaintiff has not pled sufficient facts to show that defendant breached its duty of care toward plaintiff. Rather, plaintiff has merely provided what amounts to a formulaic recitation of the elements of a negligence claim, which is insufficient to survive a Rule 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678. Therefore, the Court finds that defendant has not pled sufficient facts to show that he is entitled to relief on his claim of negligence.

Plaintiff further asserts a claim for gross negligence [Doc. 1 ¶¶ 55–59]. In Tennessee, gross negligence is defined as "a 'negligent act done with utter unconcern for

18

the safety of others, or done with such a reckless disregard for the rights that a conscious indifference to consequences is implied in law.'" *Leatherwood*, 121 S.W.3d at 694 (quoting *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972)). "To prevail on a claim of gross negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then prove that the defendant acted with utter unconcern for the safety of others, or . . . with such a reckless disregard for the rights of others that a conscious indifference is implied in law." *Id.* (internal citations and quotation marks omitted). In light of the Court's decision on the issue of negligence, the Court finds that plaintiff has not pled sufficient facts to state a claim for gross negligence as the finding of ordinary negligence is a prerequisite to establishing gross negligence. *See id.*

Even further, plaintiff asserts that defendant is liable for negligent hiring, training, supervision, and retention [Doc. 1 ¶¶ 89–95]. In Tennessee, a plaintiff "may recover for negligent hiring, supervision, or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012) (quoting *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)). Here, plaintiff must also establish the elements of a negligence claim as a prerequisite to his claim for negligent hiring, training, supervision, and retention. The Court finds that he has not and, therefore, has not pled sufficient facts to show that he is entitled to relief for negligent hiring, training, supervision, and retention.

### G. Conversion

Plaintiff next alleges that he was the rightful owner of certain sums of money that defendant took possession of and converted to its use [Doc. 1 ¶ 81]. Defendant has moved to dismiss this claim on the ground that plaintiff has not pled facts to show that defendant appropriated plaintiff's property because plaintiff "purchased and received a round trip ticket" [Doc. 6]. In response, plaintiff argues that what he received was less than what he bargained for because he purchased a ticket to return on July 27th, and not on a subsequent date of defendant's choosing [Doc. 9-2].

Under Tennessee law, "[c]onversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citations omitted). "A cause of action for conversion occurs when the alleged wrongdoer exercises dominion over the funds in 'defiance of the owner's rights.'" *Id.* (quoting *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008)).

Here, plaintiff's claim for conversion arises from the fact that "defendant failed to return the sums of money which were provided to it by [plaintiff] for the subject flight" [Doc. 1 ¶ 82]. Plaintiff, however, has failed to show that he had the right to possession of the money. *See, e.g., Hawkins v. Hart*, 86 S.W.3d 522, 535 (Tenn. Ct. App. 2001) ("In order to maintain a claim for conversion, a plaintiff must show a right to possession of the item converted at the time of its conversion." (internal citation and quotation marks omitted)). The funds in question were used to purchase a round trip ticket to Hawaii

which plaintiff, in fact, received. Therefore, plaintiff cannot show that defendant has appropriated funds that he was entitled to possess. To the extent that plaintiff asserts that he did not receive what he bargained for, the Court finds that the difference between returning on July 27 and returning at a later date due to flight cancellations does not entitle plaintiff to possession of the money paid for the service that he received.

## H.    Breach of Contract

Plaintiff contends that a valid contract existed between him and defendant, and that defendant breached the contract by lying about the flight, lying about providing accommodations, not providing services as it said it would, and not complying with its Contract of Carriage [Doc. 1 ¶ 78]. Defendant has moved to dismiss this claim on the ground that any remedy plaintiff has for breach of contract is contained in the Contract of Carriage, which provides that passengers "shall have no other claims in law or equity for actual, compensatory, or punitive damages" [Doc. 6].[5] Additionally, defendant argues that because it attempted to satisfy the Contract of Carriage, by offering plaintiff a $500 voucher off a future flight, there was no breach of the Contract of Carriage by defendant [*Id*.]. In response, plaintiff argues that Tennessee courts have found that exculpatory clauses that affect public interests are void as against public policy [Doc. 9-2]. In the alternative, plaintiff argues that the Contract of Carriage is an adhesion contract and,

---

[5] The Court acknowledges that it may consider defendant's attachment of the Contract of Carriage to its motion to dismiss, without treating the motion as one for summary judgment, because the document was referred to in the complaint and is central to plaintiff's claim for breach of contract. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

therefore, its enforceability will depend on whether the terms of the contract are oppressive or unconscionable [*Id.*]. Plaintiff also argues that under Tennessee law, parties may not limit their liability for willful or gross negligence [*Id.*].[6]

It is well recognized in Tennessee law that parties to a contract are free to construct their own bargains, even limiting liability for future damages, subject, however, to some exceptions. *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 892–93 (Tenn. 2002). One exception to this general rule is where an exculpatory clause adversely affects the public interest. *See Stewart v. Chalet Vill. Properties, Inc.*, No. E2007-01499-SC-R11-CV, 2009 WL 3616611, at *3 (Tenn. 2009) (citing *Olsen v. Molzen*, 558 S.W.2d 429, 431 (Tenn. 1977)) ("In *Olsen*, however, we articulated an exception for exculpatory clauses that adversely affect the public interest.").

Here, plaintiff argues that the clause in defendant's Contract of Carriage is void as against public policy because it affects the public interest [*See* Doc. 9-2]. As an initial matter, this Court must determine whether the provision at issue qualifies as an exculpatory clause. "An exculpatory clause is one which deprives one party to the agreement of the right to recover damages for harm caused by the other party's negligence." *Lomax v. Headley Homes*, No. 02A01-9607-CH-00163, 1997 WL 269432, at *4 (Tenn. Ct. App. Ma 22, 1997) (citing *Crawford v. Buckner*, 839 S.W.2d 754, 755–

---

[6] Because the Court has previously found that plaintiff cannot state a claim for negligence or gross negligence, *see supra* Part III.F, the Court does not address plaintiff's argument based on limitation of liability for willful or gross negligence.

56 (Tenn. 1992)). Upon review, the Court finds that the provision in question is not an exculpatory clause. Defendant's Contract of Carriage does not purport to deprive plaintiff of damages under the contract; rather, it merely limits what damages plaintiff is entitled to and the manner in which those damages can be enforced [*See* Doc. 6-1 pp. 35–36]. This provision is easily distinguishable from provisions that Tennessee courts have found to be exculpatory. *See, e.g., Olsen*, 558 S.W.2d at 429–30 (finding clause that released the doctor and his staff from any present or future legal responsibility associated with performing the medical procedure to be exculpatory); *Lomax*, 1997 WL 269432, at *4 (holding that a provision that stated the defendant had no liability in connection with the inspection and completion of construction of the plaintiff's home was exculpatory). Because the Court finds that the provision in defendant's Contract of Carriage is not an exculpatory clause, the Court does not further analyze whether the contract affects public interest or is void against public policy.

Plaintiff also argues that the Contract of Carriage is an adhesion contract and should, therefore, be unenforceable [Doc. 9-2]. Under Tennessee law, "[a]n adhesion contract has been defined as a standardized contract form offered to customers of goods and services on essentially a 'take it or leave it' basis, without affording the customer a realistic opportunity to bargain and under such conditions that the customer cannot obtain the desired product or service without acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (citations and internal quotation marks omitted). "[T]he essence of an adhesion contract is that bargaining

positions and leverage enable one party to select and control risks assumed under the contract . . . [so] that the weaker party has no realistic choice as to its terms." *Id.* (internal citations and quotation marks omitted).

A contract is not rendered unenforceable solely by virtue of it being an adhesion contract; rather, "enforceability 'generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable.'" *Webb v. First Tenn. Brokerage, Inc.*, No. E2012-00934, 2013 WL 3941782, at *7 (Tenn. Ct. App. June 18, 2013) (quoting *Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 734 (Tenn. Ct. App. 2003)). Tennessee courts have typically found provisions of adhesion contracts unenforceable when they purport to limit the weaker party's available remedies or provide an exclusive remedy for the weaker party that the leveraging party is not bound by. *See e.g., Taylor v. Butler*, 142 S.W.3d 277, 286–87 (Tenn. 2004) (finding that a provision to arbitrate all plaintiff's claims contained in an adhesion contract was unenforceable because it was unreasonably favorable to the defendant and oppressive to the plaintiff); *Brown v. Tenn. Title Loans, Inc.*, 216 S.W.3d 780, 787 (Tenn. Ct. App. 2006) (finding that the arbitration provision in a contract of adhesion was unconscionable because it required the plaintiff to arbitrate all claims, but left defendant other sources of remedy).

Here, there is little doubt that the Contract of Carriage is an adhesion contract. The Contract of Carriage appears to be a standardized contract that defendant offers its passengers without creating any opportunity for bargaining by the passenger. *See*

*Buraczynski*, 919 S.W.2d at 320. The Court's inquiry, however, does not stop here. The Court is still required to "clearly scrutinize [the] contract to determine if [it] include[s] terms that are unconscionable or oppressive." *Webb*, 2013 WL 3941782, at *7 (citation and internal quotation marks omitted). Plaintiff has not specifically argued that these terms are unconscionable or oppressive, and the Court fails to find so here. The Contract of Carriage provides that "[t]he sole and exclusive remedy for a passenger who has a claim under this Rule shall be the express amenities provided in this Rule. The passenger shall have no other claims or [sic] law or equity or actual, compensatory, or punitive damages" [Doc. 6-1 p. 36]. This provision merely limits the damages that plaintiff can recover from defendant and the manner in which plaintiff can assert those damages. Such provisions limiting an airlines' potential liability are not unconscionable or oppressive, but "are valid and binding on passengers as part of the contract of carriage where . . . the passenger receives notice thereof either on or with the passenger's ticket." *Wells v. Am. Airlines, Inc.*, No. 88 Civ. 5729, 1991 WL 79396, at *4 (S.D.N.Y. May 9, 1991); *see also Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930 (5th Cir. 1997) ("Carriers are allowed to limit their liability in the contract of carriage.").

Additionally, the Court finds that the provision in defendant's Contract of Carriage that limits plaintiff's remedy solely to the manner provided by the contract is distinguishable from the Tennessee cases that have found adhesion contracts with exclusivity clauses to be oppressive and unconscionable. Unlike the Tennessee cases, defendant's Contract of Carriage does not provide a non-mutual exclusivity of remedy

provision. *But cf. Taylor*, 142 S.W.2d at 287 (finding arbitration clause unenforceable because the defendant could pursue all his claims against the plaintiff in a judicial forum, but the plaintiff was required to arbitrate all her claims); *Brown*, 216 S.W.3d at 787 (finding that the arbitration provision in a contract of adhesion was unconscionable because it required the plaintiff to arbitrate all claims, but left defendant other sources of remedy). For these reasons, the Court finds that the limitation of liability and exclusivity of remedy provisions of defendant's Contract of Carriage are not unconscionable or oppressive and are, therefore, enforceable.

## I.    Quantum Meruit/Unjust Enrichment

Finally, plaintiff asserts that defendant has been unjustly enriched at his expense because defendant received and utilized "sums of money provided to [it] by plaintiff for the flight" [Doc. 1 ¶¶ 86–87].   Defendant argues that plaintiff's claim should be dismissed because plaintiff cannot recover under quantum meruit or unjust enrichment when a valid and enforceable contract exists [Doc. 6].   In response, plaintiff argues that the Contract of Carriage does not govern the same subject matter as his claims for quantum meruit/unjust enrichment [Doc. 9-2].

Tennessee courts may impose a contract implied-in-law under the theory of unjust enrichment "when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (citing *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154–55 (Tenn.

26

1966)). Tennessee courts also recognize quantum meruit "as an equitable substitution for a contract claim that may allow a party to recover the reasonable value of certain goods and services it has provided." *Dillard Constr., Inc. v. Havron Contracting Corp.*, No. E2010-00170-COA-R3-CV, 2010 WL 4746244, at *3 (Tenn. Ct. App. Nov. 23, 2010) (citing *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)). To succeed on a claim for quantum meruit,

> (1) there must be no existing, enforceable contract covering the same subject matter; (2) the party seeking recovery must prove that it provided valuable goods and services; (3) the party to be charged must have received the goods and services; (4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Id*.

Here, plaintiff has identified, and defendant has acknowledged, an enforceable contract that governs the parties—that is, the Contract of Carriage. Although plaintiff now argues that the Contract of Carriage does not cover the same subject matter that is the basis of plaintiff's claim for unjust enrichment/quantum meruit, the Court is not persuaded by this argument. Plaintiff's allegation that defendant has been unjustly enriched at his expense arises from the fact that he was returned on a different date and class service from what he purchased [Doc. 9-2]. The Court finds that this contingency is covered squarely under the Contract of Carriage. Therefore, the Court finds that plaintiff

has failed to state a claim for which relief can be granted because he cannot maintain an action for quantum meruit/unjust enrichment where a valid and enforceable contract governs the parties.

## IV.     Conclusion

For the reasons stated above, the Court will **GRANT** the Motion to Dismiss by Defendant, United Airlines, Inc. [Doc. 6].  Plaintiff's complaint will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE